## Barrow, et al. v. Bradley, Mayor, et al.

(Decided January 28, 1921.)

### Appeal from Fayette Circuit Court.

1. Municipal Corporations—Taxation.—The power of a city to expend or contract to pay public funds is limited to the power to tax.

2. Taxation—Power to Tax.—The power to tax is a sovereign power legislative in character.

3. States—Memorial Buildings—Monuments—Use of Public Money.—The reasonable use of public money for memorial buildings, monuments and other public ornaments, designed merely to inspire sentiments of patriotism or of respect for the memory of worthy individuals is for a public purpose, and within the power of the state legislature.

4. Municipal Corporations—Taxation.—While as a general proposition the legislative branch of a state can not delegate sovereign powers, the power to create local governmental agencies comes with the power to confer upon such municipalities the power to tax for municipal purposes.

5. Municipal Corporations—Local Self Government—Delegation of Power.—Section 156 of Kentucky Constitution confers upon the General Assembly of the Commonwealth authority to delegate to cities and towns all powers needful for local self government.

6. Municipal Corporations—Bonds.—Cities of the Commonwealth have no inherent power to issue bonds (sec. 162 of the Const.); and same are void unless the express authority of law therefor can be found in the charter.

7. Municipal Corporations—Bonds for Erection of Memorial Buildings.—Charters of cities of the second class do not contain express or implied authority for such cities to issue bonds for the erection of a memorial building for those citizens of the city and state who lost their lives in defense of the nation.

8. Municipal Corporations—Powers—General Welfare Clause.—The powers conferred upon municipalities must be construed with reference to the object of their creation as agencies of the state in local government, and a general welfare clause added to a grant of enumerated powers in a city charter confers no other powers than such as are within the ordinary scope of municipal authority or which are necessary to accomplish municipal purposes.

9. Municipal Corporations—Powers.—Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied.

10. Municipal Corporations—Powers.—The exercise of a power by a municipality to be valid must be reasonable.

ED. C. O'REAR and WM. L. WALLACE for appellants.

WM. H. TOWNSEND, HARRY B. MILLER and JAMES A. WILMORE for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Lexington is a city of the second class and has adopted the commission form of government under which all legislative functions of the city are vested in the mayor and four commissioners who now are appellees and were defendants below.

The plaintiffs, now appellants, who are citizens and taxpayers of the city, instituted this action for themselves and on behalf of all other citizens and taxpayers, for mandamus to compel defendants to issue and sell $75,000.00 of city bonds and to apply the proceeds to the erection of a building in Lexington upon the grounds of the University of Kentucky as a memorial to the citizens of Lexington and Kentucky who gave their lives in defense of the nation in the late war with Germany and her allies.

A general demurrer to the petition having been sustained same was dismissed upon plaintiffs' refusal to plead further and they have appealed.

The petition set out in detail the enactment in strict accord with the prescribed procedure of ordinances declaring it to be a matter of public welfare and municipal concern that the proposed memorial be erected, authorizing an indebtedness of $75,000.00 and the issuance of bonds in that amount for the purpose and providing for the submission of the proposed indebtedness to the legal voters of the city; that at an election regularly held for the purpose and properly certified the indebtedness was authorized by more than a two-thirds majority, and that the same when so authorized does not exceed the constitutional limitation.

The first, if not the only question involved, therefore, is whether the city in any event had the power to appropriate funds or incur an indebtedness for the purpose proposed.

That the power of a city to expend or contract to pay public revenues is limited by the power to tax is too obvious for argument, as is also the proposition that the power to tax is a sovereign power, legislative in character. Generally all such powers are conferred upon and may be exercised only by the legislative branch of the government, except as otherwise provided by the Constitution. Section 171 of our Constitution declares that, "Taxes shall be levied and collected for public purposes only." Unless therefore the proposed indebtedness is for a public purpose it is prohibited by the Constitution and would be invalid even if it had been proposed by the General Assembly of the Commonwealth.

But it is so well settled now that the reasonable use of public money for memorial buildings, monuments and other public ornaments, designed merely to inspire sentiments of patriotism or of respect for the memory of worthy individuals, is for a public purpose that it hardly seems necessary to devote time to a discussion of this branch of the case. Kingman v. Brockton, 153 Mass. 255, 26 N. E. 998; 11 L. R. A., 123 and note; 19 R. C. L. 722; Judson on Taxation, section 349.

That this precise question has never before reached this court is significant in view of the fact that upon the statute books and throughout the state are many evidences of such expenditures by the General Assembly of the Commonwealth, and we have no doubt that such expenditures are for a public purpose and valid when so authorized.

And while as a general proposition the legislative branch of the state can not delegate sovereign powers confided to it, the power to create muncipal corporations for purposes of local self government by necessary implication as is uniformly held carries with it the power to confer upon such municipalities, as local governmental agencies, the power to tax. When, therefore, the power to create municipalities is vested in the state legislature the power is implied if not expressed to confer and define local legislative power and is practically unlimited in the absence of constitutional restrictions.

By our present Constitution, however, in section 156, it is provided that the cities and towns of the Commonwealth for the purposes of their organization and government shall be divided into six classes, and that "The organization and powers of each class shall be defined and provided by general laws, so that all municipal corpora-

tions of the same class shall possess the same powers and be subject to the same restrictions.'' And the General Assembly is required to assign cities and towns to the classes to which they respectively belong; to change assignments, provide by general law how towns may be organized and to enact laws for the government of such towns until assigned to one or the other of the six named classes.

It is apparent, therefore, that our state legislature has express power to delegate to cities and towns all powers needful for local self government, and it can not be doubted that when pursuant to this provision of the Constitution the General Assembly has provided by general laws for the organization and defined the powers of cities of these several classes and assigned Lexington to the second class that its powers are .limited as thus defined.

Yet it is asserted upon authority of 8 Cyc., 779; Lexington v. Thompson, 68 S. W. 477; Western Son. Fund Soc. v. City of Philadelphia, 31 Pa., 183; 172 Am Dec., 730; McDonald v. Louisville, 68 S. W. 413; Overall v. Madisonville, 125 Ky. 684, and ex parte City of Paducah, 125 Ky. 610, that the city of Lexington has the inherent power to issue the proposed bonds.

But an examination of these authorities discloses the fact that they deal with an entirely different phase of municipal affairs, viz: the capacities and powers of a municipality not as a local state agency but rather as a private corporation, and of the right of the legislature to interfere in the local management of such affairs of a private nature as theretofore have been conferred expressly or impliedly upon the city as a franchise by the legislature.

Obviously such authorities give no support to the contention that a city has inherent power to levy taxes for public purposes, as here attempted, and which manifestly it can do only in the exercise of its public functions delegated to it as a local state agency by the legislature.

Moreover section 162 of the Constitution declares that: ''No county, city, town or other municipality shall ever be authorized or permitted to pay any claim created against it under any agreement or contract made without express authority of law and all such unauthorized agreements or contracts shall be null and void.''

Consequently the city has no inherent power to issue the proposed bonds, and they are void unless the ''ex-

press authority of law'' therefor can be found in the charter of cities ,of the second class, which is the only express authority of law given the city of Lexington to levy taxes for public purposes.

Assuming that the term ''express authority of law'' as thus used in the Constitution is to be construed as meaning not only that which is expressly stated but also that which is necessarily included or implied from what is expressly said, as we apprehend but do not decide it should be construed, we will examine the provisions of the charter of cities of the second class under which it is claimed the desired power is conferred.

These provisions are section 3038 and subsections 3 and 16 of section 3058, which read as follows:

3038. ''The cities of Covington, Newport and Lexington are hereby declared to be cities of the second class, and the inhabitants thereof, and of such other cities as may hereafter be declared cities of the second class, respectively, are created and continued bodies corporate and politic, within their respective limits, with perpetual succession, by the name and style which each now respectively bears, with power to govern themselves in all fiscal, prudential and municipal concerns by such ordinances and resolutions as they may deem proper, not in conflict with this act or the Constitution of the State of Kentucky or the Constitution of the United States; to acquire property for municipal purposes, by purchase or otherwise, within their corporate limits or elsewhere; to hold the same and all property and effects now belonging to the said cities, held either in their own name or in the name of others, for the use of each of said cities, for the purpose and interest for which the same were granted or dedicated; to use, manage, improve, sell, convey, rent or lease the same; and to have like power over property hereafter acquired, and as such, by their respective names, shall be capable in law of contracting and being contracted with, of suing and being sued, of pleading and being pleaded, answering and being answered, in all courts and places, and in all matters whatsoever; and shall have and use, respectively, a corporate seal, and make, change, alter and renew the same at pleasure. (Paducah was transferred to this class by act of March 21, 1902.)''

3058-3. ''To provide for the levying, assessment and collection of taxes, as provided in this act, upon all property made taxable for state purposes within the limits of

the city, and not exempted by general law from municipal taxation.''

3058-16. ''To establish, erect and maintain a city prison, a workhouse, a house of correction, a house of refuge, and all other municipal buildings; make all needful regulations, and appoint all proper persons and assistants therefor; to purchase, rent or lease, within the limits of the city or eslewhere, any real or personal property for the use of the city, and to control, manage, improve, sell, lease or otherwise dispose of the same, for such purposes and considerations as they may deem proper for the public welfare.''

Section 3038 is the first section of the act which is the charter of cities of the second class and plainly was intended merely to designate the cities belonging to the class and to state generally that they were corporate bodies with power to conduct purely local fiscal, prudential and municipal affairs by ordinances and resolutions as defined by the numerous other provisions of the charter and not in conflict with the state or federal constitution. This is made entirely clear from the fact that section 3058 is headed ''General Powers'' and begins ''The general council shall have power by ordinance.'' Then follows twenty-seven subsections carefully defining the powers conferred, in no one of which is found express authority to expend money or levy taxes for a memorial building or like structure. The purposes deemed public and for which public money can be used are designated specifically or at least generically, including the following subjects: ''quarantine and health,'' ''quarries,'' ''nuisances,'' ''suppression of illegal businesses,'' ''water supply, bridges, culverts and sewers, lights, market houses, and *other buildings,* inspection of food materials, *public grounds,* regulation of intoxicants, weights, measures, riots, protection of the city's rights, support of the insane and inebriates, taking census, purchase and maintenance of city prison, workhouse and *other buildings,* restrain and punish vagrants, beggars, etc., regulate and license dogs at large, control of streets, railways and telegraph, telephone and light poles and wires, fire department, parks, cemeteries and *public grounds,* good government, eminent domain, the levy, collection and appropriation of money, etc.''

Subsection 3 relied upon authorizes the levy, assessment and collection of taxes, ''as provided in this act,''

and obviously can not of itself authorize a tax not provided for elsewhere in the act.

That the powers thus enumerated and defined refer to "public grounds" and "public buildings" twice each is quite persuasive that the power to erect a memorial building, if the legislature intended to grant it, must be found by implication in one or the other of the subsections dealing with these subjects. Certain it is that such power is not granted expressly or by fair implication elsewhere; nor can such power be fairly implied from any of the four subsections dealing with grounds or buildings unless from subsection 16 *supra* as seems to be conceded by counsel for appellants, since they only contend that in this of these four sections is the power granted.

This subsection of the statutes has been considered by this court in Board of Trustees House of Reform v. City of Lexington, 112 Ky. 171, and Wilkerson v. City of Lexington, 188 Ky. 381. In the former case an appropriation by the city of $5,000.00 toward the expense of procuring a site for and the erection thereon of a house of reform outside of but near the city and to which the city had the right to send its incorrigible juveniles was held to be authorized under this provision of the charter. A house of reform, however, is clearly a building of the same kind as those there authorized if not in fact actually named as a house of correction or house of refuge.

The difficulty in that case was not in determining that the city had the power to erect and maintain a house of reform, as clearly it did, but whether it had the right to contribute city funds to the erection of such a building by the state. That case is authority here if at all for the contribution by the city of its funds to the erection of a memorial by some other agency upon grounds of the University of Kentucky; that is, the manner in which a possessed power can be exercised. But obviously we have not yet reached that question since if the city had no power itself to erect the memorial upon grounds of its own, it could not contribute its funds to such a purpose by another upon ground it did not own and can not control.

The latter of the two cases mentioned above is much more nearly in point as to whether the proposed building is of the character the city may erect and maintain, which is the question we are now considering. In that case we held that under subsection 16 of section 3058 the city had

authority to purchase a site and erect thereon a suitable building for municipal offices, and to include therein a commodious and convenient public auditorium; and it is evident that the authority for building a public auditorium was the only troublesome feature so far as the character of the building was concerned, since a building for municipal offices is clearly a "municipal building" expressly authorized by the first portion of the section.

It is further evident that authority for the inclusion of a room to be used as an auditorium in such a building was found in the latter portion of the same subsection reading: "to purchase, rent or lease within the limits of the city or elsewhere, any real or personal property for the use of the city and to control, manage, improve, sell or otherwise dispose of same as they may deem proper for the public welfare."

As we there said: "Clearly the power to purchase and improve real estate for such purposes and considerations as the board of commissioners may deem proper for the public welfare is very broad and comprehensive," so broad in fact we think that it is limited only by the term "public welfare," but as applied of course to a municipality and not to the county, state or nation. Certainly no authority could be found here for the city to expend money for a county court house or any other public building not municipal in character.

It is a familiar rule of construction that "The powers conferred upon municipalities must be construed with reference to the object of their creation, as agencies of the state in local government." Cooley's Const. Lim. 309. And as said in 28 Cyc. 705, a general welfare clause added to a grant of enumerated powers in a city charter confers "no other powers than such as are within the ordinary scope of municipal authority or which are necessary to accomplish municipal purposes."

Another pertinent rule of construction is thus stated in Dillon's Munic. Corp., 5th ed. section 237: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by

the courts against the corporation and the power is denied." To the same effect are Cooley's Const. Lim. 270; Henderson v. City of Covington, 14 Bush 312; Mayor, etc. v. Wilson, etc., 103 Ky. 326.

Considering therefore subsection 16 as a whole in the light of these authorities we feel sure it can not be construed to confer upon the city power to erect a memorial building to the citizens of Lexington and Kentucky who lost their lives in defense of the nation, since it is extremely doubtful to say the least if such an undertaking is a matter of municipal public welfare, or within the ordinary municipal authority or necessary to accomplish municipal purposes.

We need not therefore consider the manner in which the city was attempting to use the power to see if it was reasonable, as an exercise of any power to be valid always must be.

Judgment affirmed.