# Herd v. City of Middlesboro et al.

(Decided Dec. 8, 1936.)

ROBERT J. WATSON for appellant.

R. L. MADDOX for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing in part and affirming in part.

Middlesboro is a city of the third class, operating under the commission form of government. On June 30, 1936, its board of commissioners adopted an ordi-

nance levying taxes for the fiscal year 1936-1937. The levy amounted to $2.95 on the $100, of which amount $1.29 was for general school purposes, and 19 cents was to pay the interest on and create a sinking fund to pay the principal of certain outstanding school bonds. Of the balance, 39 cents was levied to pay the interest on and create a sinking fund to pay the principal of bonds issued prior to the adoption of the present Constitution, and of bonds authorized by a vote of the people; 8 cents to pay the interest on and create a sinking fund for the payment of $60,000 of bonds issued October 1, 1929, to fund a floating indebtedness of the city; 58 cents for general municipal purposes; 2 cents for airport purposes; and 40 cents for flood prevention purposes. On July 1,. 1936, the ordinance was amended by eliminating the 8 cents' levy for the $60,000 bond issue, and increasing the levy for the other bond issues to 47 cents, thus leaving the aggregate levy at $2.95. The appellant, Charles E. Herd, a resident and taxpayer of the city of Middlesboro, brought this action against the city and its board of commissioners to have declared void the levy of 40 cents for flood control purposes, and to compel the board of commissioners to levy a tax of at least 8 cents to pay the interest on and create a sinking fund for the payment of the principal of the bonds, amounting to $60,000, issued October 1, 1929, to fund a floating indebtedness of the city. The circuit court denied the injunctive relief sought by the plaintiff and dismissed his petition, and he has appealed.

The pleadings and proof fail to disclose just how the debts of the city, represented by various bond issues, were incurred, except the $60,000 debt which was funded October 1, 1929. This was a floating indebtedness of the city, concededly valid. It appears that a part of the remaining bonded indebtedness was contracted before the adoption of the present Constitution, and a part was authorized by a vote of the people subsequent to the adoption of the Constitution.

Middlesboro has a population of more than 10,000 and less than 15,000, and, consequently, under section 157 of the Constitution, its tax rate cannot exceed $1 on the $100 for other than school purposes, unless it shall be necessary to enable it to pay the interest on and provide a sinking fund for the extinction of indebtedness contracted before the adoption of the Constitution. The

appellant, however, only attacks the tax ordinance in so far as it attempts to levy 40 cents for flood control purposes, and we shall limit our consideration of the validity of the ordinance to this question.

Subsequent to July 1, 1936, the board of commissioners repealed so much of the ordinance as levied 40 cents for flood control purposes, and amended it by levying $1 on the $100 of taxable property for general municipal purposes, leaving the total levy at the same amount as the levy in the original ordinance. Appellees conceded that they proposed to use a part of the general fund for flood control purposes. Appellant insists that the necessary governmental expenses of the city will consume the entire amount realized from the levy of $1 for general municipal purposes, and that any sum expended for flood control purposes will, to that extent, exceed the revenue of the current fiscal year, and, furthermore, that the city is without authority, under the Constitution and statutes, to levy and collect taxes for such a purpose.

It appears that Yellow creek, which flows through Middlesboro, is subject to frequent overflows, and that during recent years there have been numerous destructive floods causing heavy damage to property in the city. The federal government has proposed to expend a large sum of money in an effort to prevent these recurring floods by constructing canals to drain off the water more rapidly, and by constructing a dam across Yellow creek just above the city to impound the water during periods of heavy rainfall. The expenditure of this money by the government is made dependent upon the procurement by the city of rights of way, which it is estimated will cost between $40,000 and $60,000. The question presented is: Does the city have authority to engage in a project of this kind and to use a part of its general fund for such a purpose?

A municipal corporation has only such powers as are expressly granted to it by its charter, or which are necessarily implied or incident to those so granted, or which are indispensable to the declared objects and purposes of the corporation. South Covington & Cincinnati Street Railway Co. v. Berry, 93 Ky. 43, 18 S. W. 1026, 13 Ky. Law Rep. 943, 15 L. R. A. 604, 40 Am. St. Rep. 161; Barrow v. Bradley, 190 Ky. 480, 227 S. W. 1016;

Juett v. Town of Williamstown, 248. Ky. 235, 58 S. W. (2d) 411; Covington Bridge Commission v. City of Covington, 257 Ky. 813, 79 S. W. (2d) 216. In Dillon's Municipal Corporations (Fifth Edition) sec. 237, the author says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; Second, those necessarily or fairly implied in or incident to the powers expressly granted; Third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient but indispensable."

But when a particular power has been delegated to a municipal corporation by the Legislature without any express limitations, the extent to which it shall be exercised rests in the discretion of the municipal authorities, and the courts cannot interfere so long as it is exercised in good faith and for municipal purposes. One of the powers indispensable to the purposes of a municipal corporation is the power to provide for the protection of the health, safety, and welfare of its inhabitants. The Legislature has delegated to the legislative bodies of cities of the third class power "to make all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public," section 3290-16, Kentucky Statutes; and section 3438 of the Statutes provides that:

"The board of public works shall have the exclusive power and control over the construction, supervision, cleaning, sprinkling, repairing, grading and improving of all streets, alleys, avenues, lanes, public cemeteries, parks, squares, fountains, wharves and landings, market houses and places, bridges, sewers, drains, ditches, culverts, streams, canals and water courses."

When no Board of Public Works has been established, these duties shall be performed by the common council. Section 3426, Kentucky Statutes.

The record in this case fairly establishes the necessity of some action looking to the control of floods in Yellow creek, which flows through the city. These floods

occur frequently, and cause great property damage and endanger the health and safety of the citizens. It appears that the $60,000 floating debt which was funded October 1, 1929, grew out of an emergency created by a flood which destroyed all of the bridges in the city and damaged many of its streets, rendering them unfit for travel. The preservation of the public health and the protection of the property of the citizens of a municipal corporation are legitimate corporate purposes, and we think the board of commissioners is authorized to use a portion of the general fund in procuring rights of way for the purpose of making such improvements as may be necessary to prevent the overflow of Yellow creek, so long as such expenditures do not exceed the revenues of the city for the year in which they are made. It follows that the circuit court ruled correctly in refusing to enjoin the defendants from expending any portion of the general fund for flood control purposes.

From what we have said, it is readily apparent that there is no merit in the contention that the ordinance repealing the 40 cents' levy for flood control purposes and adding that rate to the levy for general municipal purposes discriminated against taxpayers who paid their taxes before the tax ordinance was amended. On the remaining question in the case, we think the court erred in dismissing plaintiff's petition and refusing to require the board of commissioners to make provision out of the $1 tax levied for general purposes for the payment of the interest on the $60,000 of bonds issued October 1, 1929, and for the creation of a sinking fund to pay off the bonds at maturity.

Section 159 of the Constitution provides that whenever an indebtedness is contracted by a city it must provide for the collection of an annual tax sufficient to pay the interest on such indebtedness, and to create a sinking fund for the payment of the principal within not more than 40 years from the time the debt is contracted. This section of the Constitution applies to any indebtedness contracted by the city which is transmuted into bonds payable over a term of years. In City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. (2d) 603, the city was proposing to issue bonds to fund a valid floating debt. The validity of the bonds was upheld, but the court held that a tax should be levied sufficient to pay the interest on the bonds and to create a sinking fund

sufficient to liquidate the debt at maturity. A history of section 159 of the Constitution and a statement of the purpose actuating the members of the constitutional convention in incorporating it in the present Constitution will be found in McDonald v. City of Lexington, 253 Ky. 585, 69 S. W. (2d) 1065, 1067. Referring to section 36, article 2, of the third Constitution, and sections 50 and 159 of the present Constitution, the court said:

"It is clear that the end which the constitutional makers were endeavoring to attain was the equitable spreading out over the period of the bond issue of the burden of meeting that bond issue. Thus would creditors be protected in that there would be raised in amounts easily to be paid by the taxpayer a sum sufficient to discharge the debt when and as it became due either serially or at the end of the bond issue period, and thus also would the taxpayer be protected in having his burden equitably spread out over a period of years, nor could one generation thrust upon another generation the payment of a bond issue, the expenditure of which resulted as much in favor of the first generation as it did or would in favor of the second generation. The whole idea was equality of burden and ease of bearing it. We are convinced that the provisions of section 36 of the third Constitution and section 50 of the present Constitution, the principles of which were carried over into section 159 of the latter instrument, mean that not only is the Legislature and the political subdivisions required to raise by annual taxation money sufficient to discharge the interest on the bond issue or indebtedness, but also to annually and from the inception of the creation of the debt to raise by taxation an amount sufficient to amortize the bond issue when and as the same falls due either serially or at the end of the bond issue period as the character of the bonds may be according to well-known amortization principles."

We conclude that the circuit court erred in refusing to grant a mandatory injunction requiring the board of commissioners to make provision for the payment of the interest on the $60,000 bond issue, and for the creation of a sinking fund sufficient to pay off the bonds at maturity. To this extent the judgment is reversed, and in all other respects it is affirmed.