## Theobald et al. v. Board of Com'rs of Buechel Water Dist. et al.

Dec. 19, 1941.

C. W. Grafton for appellants.

Doolan, Helm, Stites & Wood for appellees.

Opinion of the Court by Stanley, Commissioner—
Affirming in part and reversing in part.

The Board of Commissioners of Buechel Water District was created under the terms of Section 938g-1 of the Statutes for the purpose of providing water to inhabitants in a described territory of Jefferson County. It proposes to issue $175,000 of bonds to cover the cost. The bonds are to be payable out of the revenues of the project and, if it should become necessary, by assessment of the property. As stated in Olson v. Preston Street Road Water District No. 1, 286 Ky. 66, 149 S. W. (2d) 766, the statute expressly provides for payment of the bonds by the assessment of the property benefited, but in the absence of a prohibition it was held under some of the general statements of the act that payment of the bonds may be provided out of the revenues also.

In this declaratory judgment suit filed by the corporation and the members of the board, the defendant, Robert J. Theobald, was permitted to defend as the representative of all the holders of property within the district. Several controversial questions were submitted to the chancellor who made a declaration of rights concerning them. On the appeal three of those questions are presented for review.

It is proposed to pay the bonds as they annually mature and the interest on all of them with the revenues

exclusively, but with the provision, as declared in the proceedings and as a definite covenant of the bonds themselves, that the commissioners of the district "will levy against the properties embraced in said district assessments from time to time within the limits provided by law if such action shall be necessary to provide for the payment of the principal or interest thereof; [and] that it will use due diligence in the collection of any assessment or assessments so levied." The plan calls for the postponement of the actual assessment until the same shall be needed in any particular year to supplement the revenues in order to meet the annual obligations. If that becomes necessary the assessment shall in no event exceed one-tenth of the whole sum which, without the use of the revenue payment plan, it would have been necessary to levy in the beginning. The statute expressly provides for the preparation of an assessment roll containing a description of the property benefited, the names of the owners and the amount of assessment against each of the several tracts. The total is the cost of the project. When the assessment roll shall become final it constitutes a first and paramount lien against the land assessed, subject only to the lien for state and county taxes. Section 938g-10, Statutes. It is proposed to stop this proceeding short of the action necessary for this lien to attach. Then as may be required in order to make up the year's deficit in the revenue to complete the proceeding to the extent necessary, make the partial assessment and enforce the collection.

1. The first question submitted for a declaration, or rather for a review of the trial court's declaration, is whether the district may postpone an actual assessment under the promise we have outlined, and whether a present lien on the property will exist during the suspension of the procedure. The plan prescribed by the statute for the payment of the cost of the improvements is not unlike the usual plan for the payment of street improvements by assessment of the property benefited. Though the construction work shall be completed in such instances, there is only a potential lien on the property until the entire procedure, including the issue of apportionment warrants, shall have been complied with. Thus, we have held that the conveyance of property by a general warranty deed while a street was being built transferred the title free of lien, so that there was no breach of warranty when the lien was created later by the

assessment of an apportionment warrant. Long v. Barber Asphalt Paving Company, 151 Ky. 1, 151 S. W. 6; Lindenberger v. Rowland, 158 Ky. 760, 166 S. W. 242. That is substantially the case here. The right to declare and enforce liens of this character is purely statutory and unless the terms of the statute have been substantially complied with there is no lien. In this condition there is only a potential lien which is subject to being made actual by the completion of the prescribed formula. Such was the ruling of the trial court. The appellees prosecute a cross-appeal from it.

2. The scheme stipulates that no assessment in any given year shall exceed one-tenth of the entire issue of bonds covering the cost of the project. The question is whether, when such an annual assessment to cover the deficit in revenues shall have been made, the property holders must pay it in full or have the privilege of paying it in ten annual installments. Section 938g-11 of the Statutes provides that upon an assessment being made the landowner may pay it in full at any time within thirty days. At the end of that period the district commissioners are empowered to issue bonds to pay the balance, and when they do that Section 938g-13 permits the payment of the several assessments in not less than ten annual installments. This contemplates the satisfaction of the entire sum. When that is made indefinite by reason of the probabilities and expectancy of satisfying the bonds by use of the revenues of the District and under the provision that no particular levy can ever exceed in any one year what would otherwise constitute an annual installment had the provisions of the act been strictly adhered to, the statutory scheme and the convenience of the landowner are met. To permit the payment of each annual assessment in ten installments would possibly carry the final liquidation to nineteen years. We concur in the chancellor's declaration that the property owner will not have the right to pay such partial assessment in installments.

3. The trial court held that the commissioners of the district are authorized to provide fire fighting equipment in addition to the water distribution facilities and to pay for same with part of the proceeds of the bonds. The purposes for the creation of this quasi municipal corporation are stated in the first section of the act (Section 938g-1, Statutes) to be to preserve and promote

the public health, convenience and welfare and "to provide fire protection" to the citizens of the territory. It is further described during the course of the statute to be to furnish a water supply. The several provisions of the act respecting the construction work and the items of cost contain nothing which intimates that the purchase of fire fighting equipment may be included. It is true following the specification of items of cost there is the general statement "and all other costs and expenses of every kind, nature or description," but we think that must be construed in the light of the antecedent phrase, "the costs of the work to be done," i. e., construction of the facilities, and of the act as a whole. The statutory scheme is limited to providing water facilities and to supplying it. The absence of any authority to levy any kind of tax or to raise any money other than enough to pay for the facilities supports the conclusion that the cost of fire fighting equipment cannot be included in the amount of the bonds. This, however, does not prevent installing necessary or proper fire hydrants or other similar facilities making water available for fighting fires. On this point we are, therefore, constrained to differ with the declaration of the chancellor and to hold that the same is not authorized.

The judgment is affirmed on the first two points and reversed on the third, with directions to modify it accordingly.

Whole Court sitting.