## Olson et al. v. Preston St. Water Dist. No. 1 et al.

June 12, 1942.

Thomas S. Dawson and Woodward, Dawson & Hobson for appellants.

Robert L. Sloss, Willis & Sloss and Lawrence S. Grauman for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Section 938g-1 et seq., Kentucky Statutes, provide for the establishment of water supply districts, for their operation under supervision of commissioners, and for the issuance of bonds for the purpose of carrying out the project, which purpose, as is evidenced by the Statutes, is to promote the public health, convenience and welfare and to provide fire protection by the furnishing of an adequate supply of water. Following the provisions of the first section of the Act, appellee district was established on September 16, 1940, and since then the district has about completed its supply system and issued bonds. We approved the bond issue plan in Olson v. Preston St. Road Water District No. 1, 286 Ky. 66, 149 S. W. 766.

Olson, suing as an individual taxpayer, resident and prospective water consumer, and on behalf of all others of the district similarly situated, instituted this suit against the commissioners, seeking to enjoin them from carrying into effect a purpose to buy an already installed plant furnishing water to the residents of Camp Taylor, a suburb of Louisville, the system being owned by a corporation composed of subscribers, the Camp Taylor Development Company.

The plan under which this company operates, the layout of Camp Taylor and the system, may be noted in Beutel v. Camp Taylor Development Co., 268 Ky. 544, 105 S. W. (2d) 632. The instant suit was in form and substance one for a declaration of rights, authorized by Section 639a—1 et seq., Civil Code of Practice. The chancellor overruled demurrer to Olson's petition, and defendants answered; the chancellor then overruled plaintiffs' demurrer to the answer; there being no further pleading the court dismissed Olson's petition, thus denying him relief and he appeals. As presented here the allegations of the pleadings may be taken as an agreed statement of facts around which the legal issue revolves.

The contract proposed is to be made with the Development Company, which serves a densely populated area adjacent to Louisville. Its plant consists of supply facilities only, since it receives water by attaching its lead pipes to the mains of the Louisville Water Company under an existing contract. A portion of the area supplied by the Development Company's system, and a part of the plant, lie within the boundaries of Preston District; its entire system is immediately adjacent to the district for a distance of about one and a half miles, and all of it within a radius of two miles of the boundaries of the Preston Road District.

It is agreed that it is impracticable for the district to acquire as a separate entity that part of the plant which lies within the district, because the system is not susceptible of separation, if indeed the company could be induced to attempt a separation. In order to make physical connection so as to afford adequate water supply, it will only be necessary to lay an additional 400 yards of main from the district system to connect the two.

The answer points out the benefits, financial and otherwise, which would inure from a joining of the systems; it would do away with numerous dead ends in supply lines of both systems, resulting in an increased pressure; prevent stagnation by completing better circulation. There would be a reduction of insurance rates by increasing the supply of water. Both the Company's subscribers, and the users of water in the district, would be assured lesser rates by the purchase of increased volume, and the district would have the assured sale of water to a much larger group of subscribers, thus guaranteeing increased revenues and retirement of bonds, resulting in a more immediate district ownership. To some extent like benefits will inure to the customers in the Camp Taylor area.

Upon this state of facts appellees contended that under Section 938g-6, Kentucky Statutes, they have power to carry into effect the proposed contract and to issue the self-liquidating bonds to provide funds for the purchase. The appellant challenges the power, insisting that the statute, supra, cannot be so construed as to authorize an established district to purchase a supply system, except where the system lies wholly within the boundary of the district as established.

Plaintiffs' grounds for relief are of somewhat general nature, though he asserts that his rights and the rights of those for whose benefit he sues will be affected by carrying out the plan; that if the plan be approved "there will be in addition to the present pledge of revenues of the water works system on account of the outstanding bonds, an additional pledge of such revenues for retiring the principal and interest on the revenue bonds which are proposed to be issued for the purpose of acquiring the water system," in contemplation of purchase. We need not discuss the effect of this allegation, since the determination of the question turns on the extent of powers and the manner of exercise, as delegated by the legislative act. There is no dispute as to the assertion that the plan has heretofore been submitted to those versed in such matters, who have determined that from a practical and financial standpoint it is sound, but the question is one of authority, depending upon a construction of the empowering statute.

Counsel for appellee insist that the section, supra, undoubtedly vests the district with power to purchase the sought water system, though reaching this conclusion by placing upon it a somewhat strained construction, and at the same time overlooking another section of the statute, which under the agreed facts is applicable. Section 938g-3. This decided stand does not entirely eliminate from discussion the assertion in answer, and tersely mentioned in briefs that the court should give attention to Section 938g-20, Kentucky Statutes, which enjoins a liberal construction so as to carry into effect and meaning the intent and purpose of the act, as above indicated, which rule the court would willingly apply if it were possible to overlook another well established rule when the question of "power" of a municipal organization, created by a higher body arises. It is a universal proposition of law that such a body may not transcend vested powers. In Dillon's Municipal Corporations, 5th Ed., Section 237, these powers are said to be:

"First, those granted in express words; Second, those necessarily or fairly implied in or incident to the powers granted; Third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient but indispensable."

We are thoroughly impressed with the idea that to

carry out the proposed plan would be convenient and would redound to the promotion of welfare and a decided financial saving, but it is not made to appear that it is indispensable, which if true could only be brought into play if it were concluded that the power sought to be exercised be necessarily or fairly implied by or incident to expressly granted powers.

We had fair opportunity to apply rule 2 or 3 supra, in Theobald v. Board of Commissioners, Buechel Water Dist., 288 Ky. 720, 157 S. W. (2d) 285, but could not find the way to depart from the basic rule, though the things sought there were perhaps more nearly essential to the purposes of the whole scheme. We might refer to many opinions laying down the general rule; a few will suffice. Barrow v. Bradley, 190 Ky. 480, 227 S. W. 1016; Walker v. City of Richmond, 173 Ky. 26, 189 S. E. 1112, Ann. Cas. 1918E, 1084; Board of Education of Newport v. Scott, 189 Ky. 225, 224 S. W. 680; Herd v. City of Middlesboro, 266 Ky. 488, 99 S. W. (2d) 458; City of Middlesboro v. Kentucky Utilities Co., 284 Ky. 833, 146 S. E. (2d) 48.

In order to uphold the position of appellees, it would be necessary to enlarge the provisions of the section in question, and to hold that the district could purchase and operate a plant, which does not lie wholly within the territorial confines of the established districts. If there were possibility of severability, it might take over that portion lying in the district, and operate it if the operation be confined to supplying water to residents of the district. The statute does not provide for taking over any part of a supply plant lying without the district, and as we read the entire statute, there is nothing which would lead to the conclusion that under the charter power the district could operate outside its boundaries.

We are dealing with the subject solely as applying to residents of the district, and not at all from the standpoint of the residents of the Camp Taylor area, not parties to the agreed suit, who may have some vested rights which might be influenced by the consummation of the projected plan. If the proposed plan be carried to completion, the practical result would be that the organized district would be exercising powers not expressly granted, or reasonably implied, or essential to the carrying out of what the legislature intended to grant and in

plain language granted; the power to obtain a supply of water and furnish same to the residents of the water district as established by the court, and in the manner directed. To throw the door open to the extent here advocated, would permit such districts to extend operations far beyond the intended limits. That there was in the mind of the enacting body a decided limitation is made clear by Section 938g-3, which provides the only method by which the territorial limits of the established district may be enlarged.

There must be a petition filed by the commissioners of the established district with the county court, describing the boundary proposed to be annexed. Notice is to be given, and within a prescribed time "any resident of the water district or other territory proposed to be annexed * * * may file objections and exceptions." The county judge hears and determines the matter, and makes order according to his finding, with right of appeal to the circuit and this court.

Thus it will be seen before any enlargement of the established district, one resident of such, or of the boundary proposed to be added, is authorized to have the matter determined, not by the commissioners but by the courts. We are much impressed with the showing of advantage by appellees, which would grow out of the proposed project financially and otherwise, as well as to disadvantages which will face the people of the district, and perhaps those in the Camp Taylor area, not losing sight of the existing emergency due to an increase of population of the areas, if the plan fail.

Mindful of the situation we have endeavored to reach a helpful solution. However, should we construe Section 938g-6 as giving the power to purchase the existing supply plant, situated partly in and partly out of the established boundary, we may not overlook the provisions of Section 938g-3 under which alone an existing district may be enlarged. Having this view of the meaning of the applicable sections, we are compelled to reverse the judgment with directions to set same aside and grant plaintiff the relief sought.

Whole Court sitting.

Judge Ratliff absent.

Judge Tilford, dissenting.