Sam **EZELLE** for and on behalf of the Kentucky State AFL–CIO; and E. S. Shidal, Appellants,

v.

**CITY OF PADUCAH,** Kentucky, Tom Wilson, Mayor, City of Paducah, Kentucky; Cowles Mallory, City Manager, City of Paducah, Kentucky; Bus Rutter, City Treasurer of the City of Paducah, Kentucky and Greater Paducah Chamber of Commerce, Inc., Appellees.

Court of Appeals of Kentucky.

May 9, 1969.

Herbert L. Segal, Louisville, for appellants.

J. William Howerton, Paducah, for City of Paducah, Kentucky, Tom Wilson, Cowles Mallory and Bus Rutter.

Waller, Threkeld & Whitlow, Paducah, for Greater Paducah Chamber of Commerce.

CULLEN, Commissioner.

In issue is the validity of the actions of the City of Paducah in purchasing through the local chamber of commerce an interest in certain factory property. The instant suit was brought by the Secretary-Treasurer of Kentucky State AFL–CIO, as representative of "employees and working men and women, including residents and taxpayers of the City of Paducah," and by a local resident and taxpayer. The complaint sought a declaration that the actions of the city were unconstitutional and void, and that KRS 102.060, under which the actions purported to be taken, is likewise unconstitutional and void. The circuit court entered judgment declaring that the actions of the city were valid, and finding that an adjudication as to the constitutionality of

KRS 102.060 was not required. The plaintiffs have appealed, asserting that KRS 102.060, and the actions of the city purporting to have been taken thereunder, violate Section 179 of the Kentucky Constitution and should therefore have been declared unconstitutional.

By an ordinance of April 14, 1966, the board of commissioners of Paducah authorized the transfer of $75,000 from the city's general fund to a bank account designated as the "City of Paducah Chamber of Commerce Industrial Development Fund" and directed that it be paid to the Greater Paducah Chamber of Commerce, Inc., as soon as possible after June 16, 1966, subject to the conditions that: (1) The Chamber have complied by that date with all of the requirements of KRS 102.060 and "certifies its action in connection therewith to the herein Board of Commissioners;" and (2) the fiscal court of McCracken County have paid over a similar sum to the chamber for industrial development purposes. The ordinance further provided that the board of commissioners would take and publicly record any additional action necessary to validate the transfer, and authorized the mayor to execute any necessary contracts.

On July 12, 1966, the board of commissioners adopted a resolution reciting that the chamber of commerce proposed to use the sum of $150,000 to purchase the existing factory property of the International Shoe Company in Paducah "in order that said International Shoe Company may build a new, large, modern manufacturing establishment in the City of Paducah and retain its manufacturing activities therein;" that the fiscal court had agreed to put up $75,000 from county funds to pay for a one-half interest in the property and the chamber had agreed to use the city's $75,000 to buy the other one-half interest in trust for the city to be conveyed to the city on request. The resolution authorized the city manager and city treasurer to pay over to the chamber the $75,000 set aside by the April 14 ordinance to be used to acquire for

the city the one-half interest in the factory property.

Thereafter the purchase of the factory property was completed by the chamber of commerce and representatives of the fiscal court. Title to one one-half interest was taken in the name of the county and title to the other one-half interest was taken initially in the name of the chamber but subsequently was conveyed by the chamber to the city.

The basic contention of the appellants is that KRS 102.060, and the action taken by the city purportedly thereunder, violate the provision of Section 179 of the Kentucky Constitution that a county or city shall not "obtain or appropriate money for, or to loan its credit to, any corporation * * * except for the purpose of * * * bridges. * * * or * * * roads * * *."

Under the holdings of this court that a governmental body may choose a private institution as an instrumentality for the accomplishment of a public purpose we find no violation of Section 179 in the statute as interpreted and applied in the instant case. The precedent is found in Norman v. Kentucky Bd. of Managers World Columbian Exp., 93 Ky. 537, 20 S.W. 901, 18 L. R.A. 556; Board of Trustees of House of Reform v. City of Lexington, 112 Ky. 171, 65 S.W. 350; Hager v. Kentucky Children's Home Society, 119 Ky. 235, 83 S.W. 605, 67 L.R.A. 815; Butler v. United Cerebral Palsy of Northern Kentucky, Inc., Ky., 352 S.W.2d 203. The interpretation and application of the statute in the instant case were to accomplish a specific public purpose.

In our opinion, if the statute is questionable constitutionally, it is because, in its possible interpretation as authorizing a blanket, unrestricted appropriation of public funds to a chamber of commerce for "industrial development purposes" to be selected by the chamber, it permits such a delegation of major policymaking power as to amount to an abdication of governmental authority. Even Kenneth Culp Davis, to

some of whose views this court subscribed in Butler v. United Cerebral Palsy of Northern Ky., Inc., Ky., 352 S.W.2d 203, and in Commonwealth v. Associated Industries of Kentucky, Ky., 370 S.W.2d 584, concedes that a delegation to be valid should be occasioned by practical necessities and should be accompanied with effective safeguards, and he recognizes that there may be areas of major policy determination into which delegation should not extend. See Davis, Administrative Law Treatise, Vol. 1, sec. 2.15, p. 148, sec. 2.16, p. 156. Lack of practical necessity for a blanket delegation, and the absence of any safeguards except the existence of the right to bring a post-action suit to recover for misappropriation, might suggest that KRS 102.060, to the extent it could be construed as authorizing a blanket appropriation for expenditure by the chamber of commerce for such "industrial development purposes" as it saw fit, provides for too extensive a delegation of governmental authority.

But we are not compelled to pass on the constitutionality of the statute in the respect just mentioned, because as we understand the action of the city in the instant case there was no attempt made to give a blanket appropriation to the chamber of commerce. As we read the ordinance of April 14, it was intended by the city from the outset that the chamber would be required to submit to the board of commissioners a specific proposal for use of the money before it would be turned over to the chamber. As noted earlier in this opinion, the ordinance made it a condition of the money's being paid over to the chamber that the latter "certify its action" to the board of commissioners. Other terms and conditions of the ordinance further made it clear that the city was contemplating submission to, and approval by, the city of a specific project. That this was the intent is made crystal clear by the fact that the money was not in fact paid over until the chamber had reported the proposal to buy the International Shoe Company property, and that proposal was approved by the resolution of July 12. There were no elements

of delegation of policy-making authority in the transaction.

The appellants have not in any appropriate manner raised any question as to whether the acquisition of the factory property by the city and county did in fact accomplish a public purpose. In fact, the appellants seem to have conceded that the acquisition of a one-half interest by the county, which was done directly rather than through the name of the chamber of commerce, was valid.

The judgment as modified by this opinion is affirmed.

All concur.