## Williams v. City of Raceland, et al.
(Decided Oct. 7, 1932.)

. A. V. POLLOCK for appellant.
JOHN T. DIEDERICH for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and Reversing in part.

This is a declaratory judgment proceeding brought by appellant and plaintiff below, W. H. Williams, against the appellees and defendants below, the city of Raceland and some of its officers, to test the validity of a proposal by the city to construct, maintain, and operate a system of waterworks within the city, and to issue bonds to obtain the necessary funds therefor, pursuant to the provisions of chapter 133 of the Acts of 1926, as amended by chapter 92 of the Acts of 1930. The first one of them authorized cities of the second, third and fourth classes to acquire a system of waterworks by issuing the bonds of the city but to be redeemable only from revenues derived from the operation of the plant, and authorizing the putting it in lien to secure the bonds and coupons for any deficiencies in the operating revenues from which the bonds and coupons were to be redeemed.

The act contains a provision that the debt so created by the issuing of such bonds shall not be one of the city, nor shall any of its municipal revenues in any manner be pledged or become liable for the payment of any bond, or any coupon, but that they shall be secured only by pledging the revenue arising from the operation, and by a lien on the plant. Other provisions were enacted looking to the carrying out of the primary purpose of the act, and to the enforcement of

the scheme for which it provides, and prescribing certain regulations as a guaranty therefor.

The second statute (chapter 92, Acts of 1930) simply added to the classes of cities to which it applied, so as to embrace those of the fifth and sixth classes, and re-enacted the 1920 act as so amended. The latter is published on page 647 of the Session Acts of 1926, while the amendatory 1930 act is published on page 331 of the Session Acts for that year.

The city of Raceland is a city of the fifth class, and was given the authority under the 1930 amendatory act to acquire a waterworks system under the plan outlined in the 1926 act as so amended. In April, 1931, its council passed an ordinance to carry into effect the authority so given, and which provided for the issuing of bonds to the amount of $40,000 from the proceeds of which the waterworks plant was to be constructed. The ordinance followed the provisions of the statute and incorporated in it the form of bonds to be issued and which conformed to the statutes, by expressly providing that neither the bond nor any coupon was the obligation of the city, and that they should be redeemed from the income derived from the operation of the plant, which was also pledged for that purpose, and a lien was given on the plant to secure any deficiency of such income. The bonds were about to be issued, preparatory to the commencement of the construction of the plant, when plaintiff, a citizen and taxpayer within the city, brought this action against it, and certain of its officers whose duties related to the execution of the scheme, to enjoin the enforcement of the ordinance and to obtain a declaration of the rights of the city in the premises.

As grounds for the injunction, plaintiff averred in his petition that the 1930 statute, in so far as it authorized the construction or acquisition of a waterworks plant according to the provided plan, was repealed by chapter 109 of the Acts of 1932, which is on page 552 of the Session Acts of that year. That act amended sections 1, 2, and 19 of the 1926 act, and to which act only did its title refer; it being expressly mentioned therein that the enacted amendment of those three sections was for the purpose of extending "the provisions thereof (the 1926 act) to include the acquisition of sewerage systems within said cities." However, in the enacted substituted and amended sections, following

the language of the 1926 act, which was confined to cities of the second, third, and fourth classes, the 1932 act adopted the same language employed in the 1926 act, without any reference to cities of the fifth and sixth classes, which, as we have seen, was incorporated into the 1926 act by the amendatory one of 1930. In doing so, the members of the 1932 session of the Legislature took no notice whatever, and made no reference to, the 1930 amendment giving the authority to adopt and appropriate the plan for acquiring waterworks provided for in the 1926 act, and treated the matter as if no amendment had ever been made to it, conferring the authority therein created upon cities of the fifth and sixth classes.

Evidently the members of the 1932 Legislature were not aware of the 1930 amendment, or, being aware thereof, they did not intend by chapter 109 of its acts to confer upon cities of the fifth and sixth classes the right to construct sewerage systems upon the same plan. But plaintiff contends that the 1932 amendment had the effect to repeal the 1930 one and to thereafter confine the authority given by the 1926 act to only cities of the second, third, and fourth classes as was true under that act when first enacted. But we do not agree with that contention. To begin with, the 1932 act expressly states in its title that the 1926 one is to be amended only in one particular, and which was ''so as to extend the provisions thereof to include the acquisition of sewerage systems within said cities.'' There is nothing in the title thereto to indicate that the 1926 act was intended to be amended so as to take away from any class of cities the authority and privileges conferred by it, as amended by the 1930 act.

On the contrary, it is expressly stated in the title, as we have seen, that its only purpose was to extend the right and authority created by the 1926 act so as to include the acquisition of sewerage systems, and which had the effect to confer upon cities of the second, third and fourth classes, not only the right to acquire waterworks systems under the enacted plan in the 1926 act, but to also acquire sewerage systems under the same plan. It left the 1930 act untouched and intact, and which continued the same authority to cities of the second, third, and fourth classes, as well as those of the fifth and sixth classes, to obtain waterworks systems under the enacted plan. But the 1932 act did confer authority on cities of the second, third, and

fourth classes to also acquire sewerage systems under the same plan.

It is a universal rule, adopted and applied by all courts and announced by all text-writers, that repeals by implication are not favored and that they will not be decreed unless there is an irreconcilable contradiction between the repealing statute and the prior one, so as to create an inescapable inference that the Legislature intended to repeal the former statute by the enactment of the later one. If the two statutes can be so construed as to reconcile the continued existence of both, then it is the duty of the court to so declare, and to adjudge that the latter one did not repeal the former one. Those principles relating to the enactment and construction of statutes are so primary that we deem it unnecessary to incumber the opinion with the citation of cases or texts so holding. It is also a guiding rule of courts in the interpretation of statutes, as well as other written documents, to search for the intention of those who brought them into existence, which in the case of a statute is the Legislature, and adopt that intention. In doing so, the purpose to be accomplished by the enactment of the statute may not only be considered, but it is a potent fact in arriving at the proper interpretation.

In considering and disposing of a similar situation, this court in the case of Neutzel v. Ryans, 184 Ky. 292, 211 S. W. 852, 853, in announcing the principle that the intention of the Legislature if ascertainable, should prevail, even over the words it employed, said: "The reason for the enactment must enter into its interpretation, so as to determine what was intended to be accomplished by it. The purpose is to give effect to the legislative intent. The will of the Legislature, not its words, are the law." Of course, it was only intended to say in that excerpt that the "will of the Legislature" was the one to be gathered from the language of the statute under consideration and other pertinent recorded facts in connection with its enactment, such as the title to the act, and in some instances the journals of the respective houses. It was not intended to intimate that in construing a statute it would be competent to prove by parol an asserted "will of the Legislature" contrary to the terms of its enactment or from anything to be gathered from the records in connection therewith. Following that rule, which is no doubt sound, we conclude that it was the intention and will

of the 1932 General Assembly not to take away from cities of the fifth and sixth classes the authority and privilege of acquiring waterworks systems under the plan given to them by the 1930 amendment to the 1926 act, but to confer upon cities of the second, third, and fourth classes the additional authority to acquire sewerage systems under the same plan.

However, the precise question involved in this case was directly presented to this court in the case of Barnett v. Caldwell, 231 Ky. 514, 21 S. W. (2d) 838, in which the facts were identical with those appearing in this case, i. e., that the Legislature attempted to amend a named section of the Kentucky Statutes, which had in the meantime been amended, by another later act, and we held that the last amendatory act following the first one did not operate to repeal the intervening amended act except in so far as it necessarily, did so by implication, the intervening amendatory act not having been expressly repealed by the later one. The argument and reasoning employed in arriving at that conclusion will not be repeated here, since it may be obtained by consulting that opinion. We therefore conclude that the court properly held that Raceland as a city of the fifth class still possesses the authority under the 1930 act to adopt and put in force the plan for the construction of a waterworks system such as is herein sought to be enjoined.

It is further contended by plaintiff that the proposed issuance and sale of the bonds in question should be enjoined because the provisions of neither chapter 22 nor chapter 23 of the Session Acts of 1932 were observed by the city and its officers, and which, it is claimed, renders the bonds void without having done so. The first one of those chapters (22) in its section 1, which is on page 124 of the Session Acts of 1932, prescribes that "It shall be unlawful for any Fiscal Court, City Council, Board of Trustees of town and other Taxing Districts, to issue and offer to sell any bond, or obligation thereof, until the issuance thereof has been approved by a court of competent jurisdiction, declaring the same are based upon and to cover an indebtedness thereof, within the constitutional limitation of the indebtedness governing the creation of such indebtedness, and any bond sold, assigned, (or) transferred without the approval of such court, in advance of its issuance, shall be null and void, and the same shall not thereafter, directly or indirectly (be) assumed

or paid by such county, city, municipality, or other taxing district."

The other one, which is on page 126 of the same volume, enacts that, in the issuing of bonds by cities, counties, and taxing districts, provision shall be made that a proportion of the bonds shall "fall due annually." The provision for the due date of the bonds made by the city of Raceland in this case did not conform to that statute, in that it made the first due date of the first of the proposed bonds in 1934, without providing for a due date of any of them or any earlier year; nor did the city attempt to comply with chapter 22 of the 1932 acts by procuring the judgment of a competent court that the proposed bond issue was valid. The court upheld the contention of plaintiff that it was necessary to comply with chapter 23 of the 1932 acts by beginning the due dates of the proposed bonds on the following year of their issue, and enjoined the issue until such an alteration in the ordinance could be made; but we do not find that it made any ruling on the objection that chapter 22 of the 1932 acts had not been complied with, requiring the approval of a court of competent jurisdiction of the validity of the bonds before they could be issued.

We had before us the question of the validity of chapter 23 of the 1932 acts in the recent case of Fox v. Boyle County, 245 Ky. 27, 52 S. W. (2d) 192, and in which we held it unconstitutional as contravening the provisions of section 159 of our Constitution, and which dispenses with the further consideration of that statute as affecting this case, leaving, as the only remaining one to be determined, whether the requirements contained in chapter 22 of the 1932 acts apply to this case, and, if so, will a failure to do so operate to bar the city from issuing the bonds until such compliance?

If that statute applied to the issuing of bonds of the nature and kind here involved, it might plausibly be insisted that the necessary approval of the court could be obtained in this case; but we need not further pursue that question, or finally determine it, since the character of bonds that the Legislature had in mind in enacting such requirements, as is referred to in section 1, supra, of the 1932 acts, are those of fiscal courts, city councils, boards of trustees of towns, and other taxing districts in which such subdivisions of the state are the obligors in the bonds so required to be approved by the court, and the statute has no application to bonds

of the nature and character here involved, where such taxing districts are not obligated, but, on the contrary, are expressly relieved from obligation to pay them by the very terms of the bonds. The purpose of the 1932 statute was to protect the taxpayer by preventing the issuing of bonds payable out of the public treasury without a judicial determination that the law had been complied with in issuing them. It has no reference whatever to bonds which are not payable out of the public treasury from taxes collected from the citizens, but which are secured only by voluntary contribution of the citizens if they wish to get the benefit of the contemplated improvement and to pay the costs thereof. It is therefore concluded that noncompliance with the provisions of chapter 22 of the 1932 acts is not fatal to the issuance of the contemplated bonds.

The ordinance providing for the issuing of the bonds and the construction of the waterworks system expressly enacts that the city of Raceland shall pay the current prices for its public fire hydrants and other water service that it may need at the rates to be fixed by the city council as any private customer would pay for similar services, and which it is shown and agreed in this case will not exceed $800 annually. If the ordinance, or the bond by its terms, obligated the city to take and pay for such supplies of water throughout the period for the redemption of the bonds, then it would create a debt for the aggregated amount of all the annual payments for that period, and which would exceed its authority under the provisions of sections 157 and 158 of the Constitution, and which was so held by us in the case of Beard v. City of Hopkinsville, 95 Ky. 229, 24 S. W. 872, 15 Ky. Law Rep. 756, 23 L. R. A. 402, 44 Am. St. Rep. 222, which has been approved in a number of succeeding cases.

In this case, however, neither the ordinance, nor any provision in the proposed bonds, obligates the city to continue to appropriate the use of the water for the purposes indicated, or for any other purpose, but gives to it only the option to do so, and requires it to pay as does any other customer when it does do so. It may at any time, or at the expiration of any year, decline and refuse to appropriate the water furnished by the system for any purpose whatever, and in doing so it would violate none of the terms of the bond, or any provision of the ordinance. The measure of its indebtedness,

therefore, as a consumer of water, is only the amount thereof which it uses and appropriates, and only as it does so. Therefore the issuing of the contemplated bonds is not invalid as in contravention of any constitutional provisions.

Wherefore the judgment on the appeal is affirmed in all of its provisions, but, on the cross-appeal, it is reversed, with directions for the court to modify it so as to conform to the principles of this opinion, and to eliminate therefrom the matters complained of on the cross-appeal.