## Kentucky Utilities Co. v. City of Paris et al.

(Decided March 10, 1933.)

GORDON, LAURENT & OGDEN and DICKSON, BRADLEY & BLANTON for appellant.

RAYMOND CONNELL for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is a suit to test the validity of $150,000 of bonds known as electric light plant bonds proposed to be issued by the city of Paris and which were authorized by a vote of the people at the November election, 1930.

It is conceded that the ordinance and other proceedings of the board of commissioners of the city creating the issue and authorizing the sale of the bonds were regular in form, and the sole ground upon which the validity of the bonds is assailed is that the city has exceeded the constitutional limit of its indebtedness. The limit of indebtedness of the city under section 158 of the Constitution is $353,768.45. There are now outstanding in bonds $168,500 which are admittedly the direct obligation of the city. In addition to the outstanding bonds which are conceded to be a direct obligation of the city, there is outstanding an issue of waterworks bonds in the principal sum of $400,000 which appellant claims is also an enforceable indebtedness of the city. If its contention is correct, then the city has exceeded the limit of indebtedness permitted by the Constitution and the proposed issue of electric light plant bonds is invalid. On the other hand, if the waterworks bonds are not direct obligations of the city, the bonds here in question are well within the city's debt limitation and are valid.

In April, 1931, and before any action had been taken by the board of commissioners of the city relative to the issuance of electric light plant bonds pursuant to the authority conferred upon it by a vote of the people, the board adopted an ordinance authorizing the issuance of $400,000 of bonds under the provisions of chapter 133 of the acts of the General Assembly of 1926 as amended by chapter 92 of the Acts of 1930, for the pur-

pose of purchasing for the city the privately owned waterworks and constructing extensions and improvements thereto. After fixing the amount of the bond issue, the denominations of the bonds, the rate of interest, and maturity dates, section 2 of the ordinan.e provides:

"All of said bonds, together with the interest thereon, shall be payable only out of the Water Works Bond and Interest Redemption Account hereinafter created, and shall be a valid claim of the holder thereof only against said fund and the fixed portion or amount of the revenues of the water plant of said City of Paris pledged to said fund."

Section 3 of the ordinance prescribes the form of the bonds and interest coupons. Section 4 provides that the income and revenues of the waterworks plant shall be set aside into a separate and special fund to be used in maintaining the plant and in payment of the bonds. It apportions the revenues as follows: (1) A sum is set aside sufficient to pay the interest and principal of the bonds; (2) it is provided that 90 per cent. of the balance of the revenues shall be set aside and used for the proper operation and maintenance of the plant; and (3) 10 per cent. of such balance of the revenues shall be set aside to the depreciation fund. Section 5 of the ordinance provides:

"While the bonds authorized hereunder or any of them remain outstanding and unpaid, the rates for all services rendered by the said water works plant of the City of Paris, or to its citizens, corporations or other consumers, shall be reasonable and just, taking into account and consideration the cost and value of said water works and the cost of maintaining and operating the same and the proper and necessary allowances for depreciation thereof and the amounts necessary for the retirement of all bonds and the accruing interest on all such bonds as may be sold and are unpaid under the provisions of this ordinance, and there shall be charged against all users of said water, including the City of Paris, such rates and amounts for water service as shall be adequate to meet the requirements of this and the preceding sections hereof. Compensation for services rendered to said city shall in

like manner be charged against the city, and payment for same from the corporate funds shall be made monthly into the special fund created by this ordinance as other income and revenues of said plant, and shall be apportioned to operation and maintenance, depreciation and bond interest redemption accounts as such other income and revenues.''

By section 6 of the ordinance the city covenanted with the holders of the bonds to maintain in good condition and to operate the waterworks plant continuously and to charge and collect all such rates and charges for the services rendered by the plant as would produce gross revenues sufficient at all times to provide for the costs of operation and maintenance and maintain the depreciation fund and the bond and interest redemption account.

In other sections of the ordinance it was provided that the lien upon the waterworks plant for the security of the bonds created by chapter 133 of the Acts of 1926, as amended by chapter 92 of the Acts of 1930, was recognized as valid and binding upon the city, and it was further provided that if there should be any default in the payment of principal and interest of any of the bonds, any court having jurisdiction might, on the application of the bondholder, appoint a receiver to operate the waterworks with power to charge and collect rates sufficient to provide for the payment of any outstanding bonds or obligations and for the payment of operating expenses.

Four hundred bonds, each for the sum of $1,000, were issued. There was a reference in each bond to the sections of the statutes in compliance with which it was issued, and each contained the following provision:

''This bond is payable only from a fixed portion of the income and revenues to be derived from the operation of the said waterworks which shall be set aside as a special fund for that purpose and identified as 'The Water Works Bond and Interest Redemption Account,' and this bond does not constitute an indebtedness of the City of Paris within the meaning of any constitutional provisions or limitations. Said City covenants that it will fix such rates for water service and collect and account for income and revenues from such water

works sufficient to promptly pay the principal and interest of this bond and the issue of which it forms a part.''

The question sharply presented for determination is whether the city, by the provision in the ordinance contract binding itself to pay out of its corporate funds into the special fund charges made against it for services rendered to it by the waterworks plant assumed an obligation constituting a present indebtedness within the meaning of section 157 of the Constitution.

The ordinance carefully provides that the bonds and interest must be paid out of the revenues realized from the operation of the waterworks plant and unless the city bound itself to take water and pay therefor out of its corporate funds no municipal indebtedness prohibited by the Constitution was created. There is no provision in the ordinance that the city shall take a specified amount of water, or any water, from the proposed plant. It is merely provided that in the event it does take water from the plant it shall pay for the water used by it at the rates charged against other users. It cannot be compelled to take and pay for any particular amount of water. Whether or not the waterworks plant renders any service to the city is optional with the city. It is not a case where the city is obligated to feed the special fund out of its corporate funds, but it stands in the same relation to the waterworks plant as a private citizen who may or may not become a patron. Under the ordinance a bondholder may compel the city to pay for the water used by it, but this is the extent of his rights against the city in this respect.

Appellant cites cases from other jurisdictions, with particular emphasis upon Hight v. City of Harrisonville, 328 Mo. 549, 41 S. W. (2d) 155; City of Campbell, Missouri, v. Arkansas-Missouri Power Company (C. C. A.) 55 F. (2d) 560, holding that an agreement by the city to credit the special fund at the established rates for all service used by it for public purposes, although it was not required in express terms to use the product of its plant, constituted an undertaking on its part to make payment from funds raised by taxation and was therefore a municipal indebtedness and violated the constitutional prohibition. Whatever may be the rule in other jurisdictions, the precise question has been

before this court in a number of recent cases, in each of which it was held that bonds issued under an ordinance similar in every respect to the one here in question did not constitute an indebtedness within the meaning of sections 157 and 158 of the Constitution. City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; Williams v. City of Raceland, 245 Ky. 212, 53 S. W. (2d) 370, 374; Wheeler v. Board of Commissioners of City of Hopkinsville, 245 Ky. 388, 53 S. W. (2d) 740.

In Williams v. City of Raceland, it was said:

"The ordinance providing for the issuing of the bonds and the construction of the waterworks system expressly enacts that the city of Raceland shall pay the current prices for its public fire hydrants and other water service that it may need at the rates to be fixed by the city council as any private customer would pay for similar services, and which it is shown and agreed in this case will not exceed $800 annually. If the ordinance, or the bond by its terms, obligated the city to take and pay for such supplies of water throughout the period for the redemption of the bonds, then it would create a debt for the aggregated amount of all the annual payments for that period, and which would exceed its authority under the provisions of sections 157 and 158 of the Constitution, and which was so held by us in the case of Beard v. City of Hopkinsville, 95 Ky. 239, 24 S. W. 872, 15 Ky. Law Rep. 756, 23 L. R. A. 402, 44 Am. St. Rep. 222, which has been approved in a number of succeeding cases.

"In this case, however, neither the ordinance, nor any provision in the proposed bonds, obligates the city to continue to appropriate the use of the water for the purposes indicated, or for any other purpose, but gives to it only the option to do so, and requires it to pay as does any other customer when it does do so. It may at any time, or at the expiration of any year decline and refuse to appropriate the water furnished by the system for any purpose whatever, and in doing so it would violate none of the terms of the bond, or any provision of the ordinance. The measure of its indebtedness, therefor, as a consumer of water, is

only the amount thereof which it uses and appropriates, and only as it does so. Therefore the issuing of the contemplated bonds is not invalid as in contravention of any constitutional provisions.''

In Wheeler v. Board of Commissioners of City of Hopkinsville, the city proposed to issue bonds for the construction of a sewerage system. In the ordinance authorizing the issuance of the bonds the city covenanted and agreed with the holders of the bonds that it would fix rates to be assessed against the consumers of the system that would raise a sum sufficient to pay the annual interest on the bonds and to retire the bonds at maturity. It also was provided that compensation for services rendered to the city should be charged against it and payment for the same from corporate funds should be made into the special fund created by the ordinance. It was held that no invalid debt was created and what had been said in the opinion in the City of Raceland Case was approved.

These cases rule the instant case, and it follows that the waterworks bonds issued by the city of Paris do not constitute an indebtedness of the city within the meaning of sections 157 and 158 of the Constitution. That being true, the proposed electric light plant bonds will constitute a valid indebtedness of the city. If the waterworks bonds constituted an indebtedness within the meaning of section 157 of the Constitution, as argued by appellant, that indebtedness would be void since the requirements of section 157 were not complied with, and consequently the validity of the electric light plant bonds would not be affected unless appellant's argument that the city of Paris agreed in terms to pay the waterworks bonds and that that agreement by the city is enforceable because it is estopped to claim against bona fide holders that the indebtedness exceeds the constitutional limitations, or is not a direct obligation of the city, is sound. The following federal cases are cited in support of this argument: Mercer County v. Eyer (C. C. A.) 1 F. (2d) 609; State Bank of New York v. Henderson County (C. C. A.) 35 F (2d) 859. The notes and bonds in each of those cases purported to be direct obligations of the respective counties, and in each instance the faith and credit of the county was pledged to the payment of the principal and interest of the note or bond. There was nothing

in the face of the note or bond which put the holder on notice that it was payable only out of a special fund. On the other hand, it was stipulated in the waterworks bonds of the city of Paris that the principal and interest was payable only from a fixed portion of the income and revenues to be derived from the operation of the waterworks which was to be set aside as a special fund for that purpose. The ordinance and the sections of the Statutes under which the bonds were issued were referred to in the bonds. Thus the purchasers of the bonds take them with notice that they are not direct obligations of the city and there is no place for the doctrine of estoppel.

Judgment is affirmed.