## Juett v. Town of Williamstown et al.

(Before Judge Rees of the Court of Appeals of Kentucky)

(Decided March 17, 1933.)

WALTER D. VEST for plaintiff.

C. C. ADAMS for defendant Town of Williamstown.

JOUETT & METCALF for interveners A. P. Barrett and Wiley F. Corl, receivers for Texas-Louisiana Power Co.

OPINION BY JUDGE REES—Sustaining motion for temporary injunction.

The plaintiff, John S. Juett, a resident and tax-payer of the city of Williamstown, brought this action against the city, the members of its board of trustees and the clerk of the board of trustees, to enjoin them from issuing all, or any portion, of the bonds authorized by an ordinance adopted October 3, 1932, which provided for the issuance of bonds of the par value of $75,000 the proceeds from the sale thereof to be used in constructing an electric light and power plant to be owned and operated by the city. The circuit court overruled plaintiff's motion for a temporary injunction, and, pursuant to the provisions of sections 296 and 297 of the Civil Code of Practice, the plaintiff, after due notice thereof to the defendants, has made before me, a judge of the Court of Appeals, a motion to grant a temporary injunction.

The ordinance in question provides for the issuance of $75,000 of bonds for the purpose of defraying the cost of constructing, operating, and maintaining an electric light and power plant for the city. A "Bond and Interest Redemption Account" is created into which there shall be set aside from the income and revenues of the plant such portion thereof as will be sufficient to pay the interest and principal of the bonds; and each bond recites that it is payable only from this special fund, and, further, that it does not constitute an indebtedness of the city within the meaning of any constitutional provision or limitation. Section 5 of the ordinance reads:

"While the bonds authorized hereunder or any of them remain outstanding and unpaid the rates for all services rendered by the said electric light

and power plant of the Town of Williamstown, or to its citizens, corporations or other consumers, shall be reasonable and just taking into account and consideration the cost and value of said electric light and power plant and the cost of maintaining and operating the same and the proper and necessary allowance for depreciation thereof and the amounts necessary for the retirement of all bonds and the accruing interest on all such bonds. as may be sold and are unpaid under the provisions of this ordinance, and there shall be charged against all users of said electric light and power, including the Town of Williamstown, such rates and amounts for electric and power service as shall be adequate to meet the requirements of this and the preceding sections hereof. Compensation for services rendered to said Town shall in like manner be charged against the Town and payment for same from the corporate funds shall be made monthly into the special fund created by this ordinance as other income and revenues of said plan and shall be apportioned to operation and maintenance, depreciation and bonds and interest redemption accounts as such other income and revenues.''

Williamstown is a city of the sixth class, and the assessed valuation of taxable property in the city is approximately $800,000. The plaintiff contends that the city is without authority to issue the bonds for two reasons: (1) It has obligated itself by the very terms of the ordinance and bonds to take and pay for service during the life of the bonds, and thus to contribute to the special fund out of its corporate funds which will create an indebtedness violative of sections 157 and 158 of the Constitution; (2) Williamstown, being a city of the sixth class, may not, in the manner proposed, secure funds with which to construct, operate, and maintain an electric light and power plant.

Reason 1, assigned by plaintiff for declaring the proposed bonds invalid, cannot be sustained, in view of the holding in the recently decided cases of Kentucky Utilities Company v. City of Paris, 248 Ky. 252, — S. W. (2d) —, decided March 10, 1933; Wheeler v. Board of Commissioners of the City of Hopkinsville, 245 Ky. 388, 53 S. W. (2d) 740; Williams v. City of Raceland, 245 Ky. 212, 53 S. W. (2d) 370, and City of Bowling

Green v. Kirby, 220 Ky. 839, 295 S. W. 1004. In each of those cases, the ordinance and bonds were similar in every respect to the ordinance and bonds in the case now before me, and the court held that the bonds did not constitute an indebtedness within the meaning of sections 157 and 158 of the Constitution. That conclusion was reached after deciding that the city itself was not obligated by any provision of the ordinance or bonds to use the product or service of its plant, although it was required to pay at the established rate for any service actually rendered to it.

The contention that Williamstown, a city of the sixth class, is without authority to issue bonds for the construction, operation, and maintenance of an electric light and power plant, the bonds and interest to be payable only from a special fund set aside out of the revenues of such plant, presents a novel question, and one not without difficulties. Section 3704-1 of the Kentucky Statutes, which is a part of the charter of cities of the sixth class, provides that "the board of trustees of such town shall have power * * * to contract for supplying the town with water and light." The charter of cities of the fifth class contains a similar provision. Section 3637-1, Kentucky Statutes.

In Swann v. City of Murray, 146 Ky. 148, 142 S. W. 244, this provision in section 3637 of the Statutes was construed as giving a city of the fifth class authority to own and maintain a waterworks system or electric light plant. That case is of little assistance, however, in solving the problem presented by the record before me, since an election was held to take the sense of the voters as to whether bonds of the city of Murray should be issued to the amount of $23,000 for the purpose of installing and maintaining an electric light and waterworks system, or either of these systems, for the city, and more than two-thirds of the voters participating in the election voted in favor of the issuance of the bonds. It was conceded that the bonds, together with the previously existing liabilities of the city, did not create an indebtedness exceeding 3 per cent. of the value of the taxable property of the city, or require a rate of taxation, exclusive of the school tax, in excess of 75 cents on each $100 of its taxable property. Thus the requirements of sections 157 and 158 of the Constitution were fully met. While the language used in the

opinion is broader than the decision of the case required, the only question decided was that the city under section 3637 had authority to construct and maintain an electric light or waterworks system, or both, under the plan there adopted.

In the instant case Williamstown, a city of the sixth class, proposes to construct, operate, and maintain an electric light plant out of the proceeds from the sale of bonds issued by the city without submitting the question to the voters, such bonds to be paid only from a special fund set aside out of the revenues of the proposed plant. The question is, May a city of the sixth class acquire and operate an electric light plant under the proposed plan without express statutory authority?

At its 1926 session the General Assembly passed an act authorizing cities of the second, third, and fourth classes to acquire a system of waterworks by issuing bonds of the city redeemable only out of revenues derived from the operation of the plant. The act provided in detail the methods by which its purpose should be carried out. Chapter 133 of the Acts of 1926, Carroll's Kentucky Statutes, 1930 Edition, secs. 2741l-1 to 2741l-20, inclusive. At its 1930 session the General Assembly amended the act of 1926 by adding to the classes of cities to which that act applied cities of the fifth and sixth classes. Acts of 1930, c. 92, 1933 Supplement to Carroll's Kentucky Statutes, secs. 2741l-23 to 2741l-42, inclusive. At its 1932 session the General Assembly amended certain sections of the 1926 act so as to extend the provisions of that act to include the acquisition of sewerage systems to cities of the second, third, and fourth classes. Acts of 1932, c. 109, Carroll's Kentucky Statutes, 1933 Supplement, secs. 2741l-43 to 2741l-45, inclusive.

Thus it will be seen that cities of the second, third, fourth, fifth, and sixth classes have been expressly authorized by statute to acquire and operate waterworks, and cities of the second, third, and fourth classes to acquire and operate sewerage systems, under the plan proposed to be adopted by the city of Williamstown to acquire and operate an electric light plant. There is no express statutory authority for a city of the sixth class to acquire and operate an electric light plant under the proposed plan.

The only cities possessing express statutory authority to acquire and maintain electric light plants by the issuance of revenue bonds payable solely out of the revenues of the plant, and not constituting a direct obligation of the city, are cities of the third class, and this authority is contained in an act passed by the General Assembly at its 1932 session. Acts of 1932, c. 119, Carroll's Kentucky Statutes, 1933 Supplement, sec. 3480d-1 et seq. Municipal corporations possess only such powers as are expressly given, or necessarily implied, in statutes constitutionally enacted, and, if there be a fair and reasonable doubt of the existence of the power, it should be resolved against the municipality. Barrow v. Bradley, 190 Ky. 480, 227 S. W. 1016; Board of Education City of Newport v. Scott, 189 Ky. 225, 224 S. W. 680; District of Clifton v. Cummins, 165 Ky. 526, 177 S. W. 432; Simrall v. City of Covington, 90 Ky. 444, 14 S. W. 369, 9 L. R. A. 556, 29 Am. St. Rep. 398; Henderson v. City of Covington, 14 Bush, 312.

The general rule is stated thus in South Covington & Cincinnati St. Railway Company v. Berry, 93 Ky. 43, 18 S. W. 1026, 15 L. R. A. 604, 40 Am. St. Rep. 161:

"The powers of a municipality are confined to those expressly granted, or those essential to the execution of those so granted. They are mere agencies of the sovereign authority of the state, and can therefore exercise no powers except those expressly conferred, or those essential to the accomplishment of the purposes of the incorporation. They must be either expressly granted, or necessarily implied as incident to those so granted, or essential to the object and purposes of the corporation."

While the question was once a disputable one, it is now thoroughly settled in this state that a city, either as an incident to its police power, or under statutory auhority "to contract for supplying the city with water and light," may own and operate an electric light plant for the purpose of lighting the public streets and places, a purely governmental matter, and, as incidental thereto, may sell the surplus of its product to its inhabitants. Swann v. City of Murray, supra; Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 281, 12 L. R. A. (N. S.) 433. In the last-cited case it was said:

"In this state a great many towns and cities own and operate their own light and water plants. In nearly every instance they furnish light and water to the inhabitants as well as to the public places. In no instance of which we are aware has it been held by any court, or allowed by an act of Legislature, that a municipality could go into a commercial business purely as an enterprise of gain. It is always allowed or supported by the reason that it has the right to make or store the product for its public use. Common sense and good business allow that it should sell its surplus to its inhabitants, rather than to waste it. In this way it is enabled, too, to accomplish the main purpose, the public purpose, by enabling it to own and to economically operate a plant for that purpose. A city, doubtless, would not be allowed to act as a bond broker. Nevertheless, it may invest its sinking fund, which it is allowed and required to have in certain contingencies, in commercial bonds, and necessarily to sell them. Its prisoners may be required to work in its workhouse. May not the product of their labor be sold? The situations all seem to us to be analogous. The main feature in each is a clearly governmental power and duty. The other or added feature is incidental, and allowed as a sensible and necessary concomitant of the main purpose. We think the city had the power to install a light plant to furnish public lighting, and incidentally as is proposed, light to its inhabitants."

No case has been cited, and an independent investigation reveals none, which holds that a city under a charter provision authorizing it "to contract for supplying the city with water and light" may construct and operate an electric light and power plant for the sole purpose of furnishing light and power to its inhabitants. On the contrary, in the cases construing this and similar provisions, in the charters of the various classes of cities, the decisions invariably have assumed that the municipally owned plant was constructed and operated primarily for the purpose of furnishing service to the city itself. The right of the city to supply its inhabitants with the product of its plant has been upheld as an incidental feature of the main purpose. The Legislature, in authorizing cities

to contract for supplying themselves with water and light, never contemplated or intended that a city might construct and operate a waterworks, or electric light plant, for the sole purpose of furnishing its inhabitants with water and lights. The intention of the Legislature in enacting these provisions was to enable cities to supply themselves with water and light by means of municipally owned and operated plants and incidentally to furnish the surplus product of such plants to their inhabitants. Such has been the interpretation placed upon these charter provisions, not only by the Court of Appeals, but by the Legislature itself.

In order to enable cities of certain classes to install municipally owned waterworks and sewerage systems to furnish their inhabitants with service without being required to use the service themselves, the Legislature at its 1926, 1930, and 1932 sessions passed the enabling acts heretofore referred to. In construing these acts and ordinances enacted pursuant thereto, in the Bowling Green, Hopkinsville, Raceland, and Paris Cases, the Court of Appeals held that bonds issued by a city under the plan or scheme provided by these acts did not constitute an indebtedness within the meaning of any constitutional provision or limitation, since the city was not obligated to take and pay for any service, and the bonds were payable only out of the revenues of the plant. In other words, the acts in question enabled the city to acquire a plant in the manner prescribed for the sole purpose of furnishing service to its inhabitants. These acts, and the decisions of the Court of Appeals construing them, are wholly meaningless, if defendants' contention is sound that section 3704-1 of the Kentucky Statutes furnishes full and complete authority to cities of the sixth class to acquire and operate electric light and power plants in the manner here proposed.

I am of the opinion that the Legislature, in conferring upon cities of the sixth class authority to supply themselves with light, did not intend that a city of this class might acquire and operate a light plant without performing the primary function of lighting the public streets and places. The proposed scheme of issuing revenue bonds of the city can be approved only upon the theory that it is optional with the city whether or not it will use the product of its plant, and, since there is no legal basis for such theory, it follows that

the issuance of the proposed bonds, irrespective of the wording of the ordinance, would constitute a violation of both section 157 and section 158 of the Constitution.

Defendants rely upon a statement found in the opinion in the City of Bowling Green v. Kirby, supra, the substance of which is that, regardless of the act of 1926, the city, acting under its general authority, was within its legal right and power in enacting the ordinance there in controversy. That statement was not necessary in the decision of that case, and is not authority on the question here presented. The only question presented and decided in that case was whether the ordinance was enacted in compliance with the provisions of the act of 1926.

All members of the court sat with me on the hearing of this motion, and all concur in the conclusion that the circuit court erred in refusing to sustain plaintiff's motion for a temporary injunction. Wherefore the motion is sustained, and the circuit court is directed to grant the relief prayed for in plaintiff's petition.