# Reconstruction Finance Corporation v. City of Richmond.

(Decided June 16, 1933.)

CHARLIE C. McCALL for appellant.

JOHN NOLLAND and O. W. HISLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In December, 1931, the city of Richmond, Ky., which is one of the fourth class in this commonwealth, ac-

quired from the Union Water Works Company its system of waterworks then owned and operated by it within the city. The same company also owned and operated a gas distributing plant within the city under a franchise that had not then expired, but the latter system was not acquired by the city. Later the owner and operator of the gas plant proposed to the city that if it would release the owner from the duty of operating the plant for the remaining period of the franchise the owner would transfer it and all of its equipment to the city, and which proposition the latter accepted, followed by the transfer of the property to it. The plant consisted of pipes laid in the streets, artificial gas-manufacturing equipment, and other facilities for the manufacture and distribution of artificial gas. A survey of the condition of the plant by the city after it became the owner demonstrated that much of the piping had worn out, resulting in much loss of gas; and, furthermore, that it would be much cheaper both to the city and consumers of gas, as well as much more efficient and satisfactory, if new equipment was installed for the distribution of natural gas.

An estimate of the cost of making such improvements revealed the fact that it would require $40,000 to do so, but the city was unable, for reasons not necessary to mention, to raise the necessary fund and to make it an obligation upon its treasury, and it conceived the idea of borrowing the amount needed for the purpose and pledging as security therefor the revenues to be derived from the operation of the plant, following the plan which we approved in the case of Williams v. City of Raceland, 245 Ky. 212, 53 S. W. (2d) 370, for the acquisition of water system by a city of the fifth class, and in the case of Wheeler v. Board of Commissioners of Hopkinsville, 245 Ky. 388, 53 S. W. (2d) 740, for the acquisition of a sewer system by a city of the third class, and in the case of Kentucky Utilities Company v. City of Paris, 248 Ky. 252, 58 S. W. (2d) 361, for the construction of a water plant in a city of the fourth class.

The city progressed with its scheme to the point of obtaining an agreement from appellant, Reconstruction Finance Corporation, to advance the necessary funds, with which to make the required improvements and alterations to the gas plant, but it required, before doing

so, a judicial determination as to the right of the city to carry out the scheme in the manner outlined, and which was followed by the filing of this declaratory judgments action in the Madison circuit court by the city against the Reconstruction Finance Corporation, and in plaintiff's petition all of the facts which we have so generally stated were given in detail, including a copy of the ordinance initiating the scheme and a copy of the bonds proposed to be issued by the city, and which, of course, included the specific terms of each, clearly showing that none of the obligations so executed by the city should ever be payable out of its treasury, or with any funds to be derived through its power of taxation, or from any other source, save and except the revenue to be derived from the operation of the gas plant; the city obligating itself to operate the plant and to collect from patrons thereof the charged rates for the utility product and to apportion a sufficiency thereof to meet the interest on and principal of the obligations executed for the indebtedness as each became due. The defendant demurred to the petition, which the court overruled, and upon its declining to plead further the cause was submitted on the petition, followed by a judgment upholding the right of the city to do the things contemplated for the improvement of the gas plant, and for its operation after being so improved, and from that judgment defendant prosecutes this appeal.

We have not been favored with a brief for appellant, and which evidences the fact that it is indifferent as to the manner in which this court disposes of the appeal, since it is not personally interested in the matter further than to withhold the advancing of the money proposed to be borowed from it, if we should hold that the city was without authority to borrow it for the purpose indicated. However, counsel for the city, with commendable fairness and candor, truthfully point out that the only doubt upon the right of the city to borrow the money to be secured in the manner indicated, and to expend it for the proposed purpose, is that which might be furnished by the application of the principles announced in the recent case of Juett v. Town of Williamstown, 248 Ky. 235, 58 S. W. (2d) 411, wherein a city of the sixth class proposed to issue and sell bonds to the extent of $75,000 for the purpose of raising funds to construct an electric light and power plant to be op-

erated by the city, with the provision that the interest upon and principal of the bonds should be paid only out of the revenue to be derived from the operation of the plant. It was held in the Juett opinion that a city of the sixth class was without *charter* authority to acquire and operate an electric lighting system under the plan proposed in that case. That conclusion was reached entirely upon our construction and interpretation of the applicable provision in the charter of cities of the sixth class as contained in section 3704-1 of the 1930 edition of Carroll's Kentucky Statutes, all of which is expressed in these brief words: "To contract for supplying the town with water and light." No statute then in force enlarged the power of cities of that class to construct, acquire, and operate any public utility, except chapter 92 of the acts of 1930, on page 331 of the session acts of that year, empowered and authorized all classes of cities below the first one to acquire, maintain, and operate a *waterworks* system by the method of pledging only its revenues "for the purpose of supplying such city or town and the inhabitants thereof with water" (not light). But the above insertion from section 3704-1 of the Statutes, a part of the charter of cities of the sixth class, in so far as it confers power and authority to construct, maintain, and operate a *lighting* system in such class cities, was not in any wise affected by the 1930 act, nor has it been done by any other act passed since the enactment of that section as it now appears in the statute. Therefore, the condition of the law when the Juett opinion was rendered, with reference to the power and authority of *sixth* class towns to acquire, maintain, and operate *lighting* plants therein, was confined exclusively to the "supplying the *town* with * * * light" (our italics), and the later enacted chapter 92, supra, of the session acts of 1930, in no wise enlarged the power of sixth-class cities with reference to the acquisition and operation of *lighting* systems within a town of that class. For which reason we held in that opinion that the city had no right to acquire and maintain the lighting plant there involved for any other purpose than supplying *itself* with light. But for *that* reason the Juett opinion would have followed the prior Raceland, Wheeler, and City of Paris Cases, supra, and a different conclusion would have been reached.

The applicable charter provisions for cities of the fourth class, to which Richmond belongs, are contained

in section 3490-36 of the same Statutes, saying in part: "The legislative body or governing authority of the several cities of the fourth class within the Commonwealth of Kentucky are granted and vested with the power to provide such cities *and the inhabitants thereof and all persons therein* with water, gas, electric power, light, heat, telephone and telegraph service by contract with any person, firm or corporation, or by works and facilities owned or leased by such cities of the fourth class, located either within or beyond the boundaries thereof." (Our italics.) It will be observed that the inserted statute grants power and authority to cities of the fourth class to provide for the utilities therein named for the uses and purposes of both the city "and the inhabitants thereof and all persons therein." Among the conveniences therein provided for are "gas," "heat," "telephone," and "telegraph," services, each and all of which a city of the fourth class is expressly authorized and empowered to provide for and to operate by plants "owned or leased" by it. One of the methods by which such plants may be acquired, and which has heretofore received the approval of this court, is that of mortgaging or putting in pledge the revenue to be derived from the plant, and which the city does not obligate itself to take any portion of the product of the plant, but only that it has the option to do so, and when done, that it will pay the same rates as is charged to the inhabitants, and which is pointed out, emphasized, and approved with respect to other utility services in the three first cited cases supra. If, as we approved in those cases, the involved charter provisions authorized the respective classes of cities to provide for the utilities for itself "and its inhabitants" (but in which the city did not obligate itself to take and appropriate any of the product), it was competent for the city to do the things therein approved and in the manner proposed, it is difficult for us to see or to arrive at any other logical conclusion than that the proposal of the city of Richmond in this case is also within its power, and that the court properly held that it was authorized so to do.

A brief analysis of what those cases determined and of what we approved therein will demonstrate the accuracy of our statement. We held in them that no part of the proposed indebtedness sought to be created

in each of them was an obligation upon the city, but only upon the revenue of the particular plant. We likewise held that in none of them did the city *obligate* itself to take, appropriate or consume any of the product of the plant, and for which reason no accumulation of rates to be charged to the city throughout the period of the maturity of the bonds created any indebtedness against the city under the principles announced in the case of Beard v. City of Hopkinsville, 95 Ky. 239, 24 S. W. 872, 15 Ky. Law Rep. 756, 23 L. R. A. 402, 44 Am. St. Rep. 222. If the city in those cases did not propose (much less obligate itself) to take and appropriate any of the product of the involved utility, it would necessarily follow that it was not acquiring the plant for its benefit, but primarily for the benefit of its inhabitants, which are referred to as beneficiaries. of the product of the plant in the charters of each and all of the class of cities involved in those cases.

Here, section 3490-36, supra, confers upon a city of the fourth class the right to acquire, maintain, and operate plants for any or all of the purposes or utilities named therein for the benefit and use of the inhabitants of the city ''and all persons therein'' as well as for the benefit of the city itself. But, as was held in the cases supra, the city, under the plan adopted and approved in them, did not obligate itself to take any of the product, and which left the outward and apparent primary purpose of the acquisition and operation to be that of serving the *inhabitants of the city, and the people therein.* Paris is a city of the same class as is the city of Richmond in this case, and in the same section (3490-36), from whence the power of fourth-class cities to acquire waterworks systems, there exists the same power to acquire and operate a gas plant, a heating plant, a power plant, and a telephone or telegraph service system. At least the latter two are of such a nature, and furnish such a character of service, as the city itself would rarely need. So far as a telephone system is concerned, the only appropriation of its service that a fourth-class city could make for a public purpose would be a telephone in the offices of the city officials, but not even that much could possibly be appropriated by the city from the service of a telegraph system. It would require a most vivid imagination to perceive any practical public purpose that a municipality could have for a local tele-

graph service system; but, as we have seen, its power and authority to acquire one. for itself, its inhabitants, and the people therein, is provided for by the same language that authorizes it to provide for a water or a lighting system, or any other of the utilities mentioned in the charter provisions supra. From such considerations the conclusion appears to be inevitable that it was the purpose of the Legislature, in enacting section 3490-36, supra, to empower and authorize cities of the fourth class to acquire, maintain, and operate appropriate systems for the rendering of any of the services mentioned, primarily and mainly to accommodate and serve its inhabitants and the people therein; and we entertain no doubt that the Legislature has the right to confer such power and authority upon municipalities, in the absence of a constitutional provision inhibiting it.

It is true that a municipality may exercise no power or authority not conferred upon it by the Legislature; but an effort to do so by it in the form of a duly enacted statute may be accomplished by express language contained in the statute, or by necessary implications from the express terms employed therein. When express and specific terms are absent, the question then becomes one of interpretation for the court, and pursuant to that authority possessed by us we see no escape from the conclusion above expressed, to the effect that the city of Richmond, under its charter provisions supra, possesses the power and authority to take the action it proposes (and in the manner proposed) for the accomplishment of the purpose indicated. However, if it were otherwise, then it is stipulated in the ordinance providing for the borrowing of the money from defendant that "any services rendered to the city of Richmond by said system by furnishing natural gas to it shall be charged against such city and shall be paid for by it in monthly installments as the service accrues out of the current funds of said city. Nothing of a more binding nature, touching the question of service rendered to the city, was contained in any of the cases supra as applicable to the commodity there involved, and because of which we held in each of them that the city was not obligated to take and appropriate any of such services.

The same is true in this case, even if it should be held that the gas plant here involved could not be acquired by the city of Richmond, except under its au-

794

thority to supply *itself* with gas and to sell to its inhabitants the surplus of the product over and above its needs. The city in this case in its public capacity might need and could appropriate the product of the gas plant, as much so as any of its inhabitants might do. It has quarters for the meeting of its council, for the conducting of its police court, and for its various officers, all of which need heat in season, and it might also need fuel furnished by gas to operate a municipally owned power plant, or consume the gas itself for power purposes. While the quantity that it might appropriate would be comparatively small as compared to that consumed by its inhabitants, such fact, when viewed in the light of the cases supra, may not be accepted as conclusive evidence that the plant is to be acquired and operated by the city as a private commercial enterprise only, and not with the view of furnishing any public service.

But it may be said that the city of Richmond in this case is barred from taking the action it proposes herein by this court's opinion in the case of Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 31 Ky. Law Rep. 278, 12 L. R. A. (N. S.) 433. It is true that the opinion in that case contains language indicating that it was the view of the court that a municipality could not acquire a public utility plant for the benefit of its inhabitants except in connection with its acquisition for its own public use, and that power and authority to acquire it "for the benefit of the city and its inhabitants" did not confer power to acquire and operate it for the exclusive benefit of the latter. The language of that opinion giving expression to those views is undoubtedly dictum, since it clearly appeared in that case that the primary purpose of the establishment of the plant there involved was that of serving the city as a municipality, and that the furnishing of the service to the inhabitants of the city was but a means of disposing of the surplus amount of product over and above that needed for the benefit of the city. There was, therefore, no occasion for the determination of the unpresented question with which the dictum deals, even if it embodied the proper conclusion under the facts and charter provisions contained in that case, but which latter are now different as applicable to fourth-class cities. They now appear in section 3490-36 supra, a part of such fourth-class charter, and which was en-

acted in 1922 long since the rendition of the Overall opinion, and which furnishes an additional reason why it (including its dictum statements) is not controlling in this case.

We, therefore, conclude that:

(1) The section of the statute last referred to (3490-36), properly interpreted under permissible rules, confers legislative authority upon Richmond, a city of the fourth class in this commonwealth, to acquire and operate the public utility here involved for the benefit of its inhabitants, and that the method and means of acquisition here proposed may be employed for that purpose.

But, if it were otherwise, then (2) the city has the right to accomplish the same purpose by the same means under the principles announced in the cases supra, since there is no material distinction between the public appropriation of the services provided for in those cases and in this one, there being a public need in each case for the particular product, but with only an option on the part of the city as to whether it will appropriate any of it, and which was also the exact situation in the cases supra.

Wherefore, for the reasons stated the judgment is affirmed.

The whole court sitting.